The case of the day is Jason Edwards v. U.S. You may proceed, Mr. Hughes. Thank you, Your Honor. May it please the Court, my name is Craig Hughes. I represent the appellant petitioner in this case, Mr. Jason Edwards. In this case, the district court erred when it denied Mr. Edwards' petition for relief pursuant to 28 U.S.C. section 2255 based upon a claim of ineffective assistance of counsel. More particularly, Mr. Edwards argues that his trial counsel was ineffective during the plea negotiation process of the proceedings. As the record indicates, Mr. Edwards was subject to five counts in the superseding indictment, the first count being conspiracy to possess with intent to distribute 50 kilograms or more of marijuana that carried a 20-year statutory maximum penalty. The other two, actually three marijuana counts, each carried five-year statutory maximum penalties, which, of course, would have resulted in a 35-year maximum range for those marijuana counts grouped together. And, of course, there was the gun count as well that carried a minimum five-year sentence. Well, Mr. Edwards knew all that, right? He knew that, Your Honor. His arraignment, he certainly in the government presented evidence that he signed an acknowledgment that he knew of those ranges. He testified later he didn't? I believe he testified that he was confused as to whether those ranges actually applied to him based upon things that were told to him by Mr. McShane. Mr. Hughes, as I was reading in your brief, I was looking for some acknowledgment of the district court's factual findings. Well, I think that the district court's factual findings are given strong deference, and I believe that if this court accepts the district court's factual findings as true, Mr. Edwards is still entitled to relief. And I base that argument on the fact that Mr. McShane testified that with respect to the 11C1C offer that was made, five years on the marijuana counts to be followed by five years on the gun count, that he did not recommend that Mr. Edwards accept or reject the offer. But more importantly, there's no evidence that he even offered Mr. Edwards an opinion as to the wisdom of accepting or rejecting that offer. And it's our position that at a bare minimum, in order to render effective assistance of counsel, he should have at least given an opinion. Clearly. It is the client's choice, right?  McShane gave the client the choice. He told him about a potentially very good outcome for him. We know that the client knew about how bad things could be, right? That's correct. So, and we know, is it correct that the defendant had rejected a non-binding offer that was for a recommendation of 90 to 97 months before the 11C1C agreement was offered? Your Honor, my recollection is that it was a 27 to 33 month. Plus 60 on the gun charge, right? That's correct, Your Honor. That's correct. He did reject that offer. The first one. Yeah. So, I mean, it's a tough choice. Is counsel required to give a bottom line? It can also be dangerous. Your Honor, I believe that counsel is required to at least give an opinion as to this is what's likely to happen if you go to trial. This is what's going to happen if you accept the plea. And in this case, given that it was an 11C1C plea, if the court accepted the offer, Mr. Edwards would have known. Well, this is very interesting, Mr. Hughes, because in your brief you were saying McShane advised Edwards not to accept the government's plea offer. That's correct, Your Honor. I believe that was Mr. Edwards' testimony at the evidentiary hearing. I'm quoting from your argument that certainly looks like you're representing what the facts are, rather than, because there's frankly not much use in summarizing Mr. Edwards' testimony for your brief, right? I understand, Your Honor. That's correct. So now you're telling us that instead of saying McShane told Edwards not to accept the plea offer, that his error was not to give any advice one way or the other. Well, that's correct, based upon the district court's finding. The district court... Which is what we deal with, right? So I'm a little troubled. I understand, Your Honor. Well, he did emphasize that his biggest problem is that he was an ex-police officer. That's correct. And Long was sentenced before he was, wasn't he? It's my understanding that he was, yes. What did he get? He got a pretty long sentence. I believe it was 20 years, 240 months. Yeah. Now, he was sort of the ringleader, I guess. So maybe he could expect more, but it wasn't going to be, he already knew going into sentencing that this was pretty serious. I don't know whether the offer was still open at that point. I don't know that. I believe that the offer expired somewhat prior to trial. I don't know the exact time period. Okay. So that was already done then. Okay. And he knew specifically because of the fact that he was a police officer that there were, that it had implications in terms of the number of levels up in the sentencing. That's correct. The abuse of trust enhancement, for instance. And Mr. McShane testified that he was very up front with Mr. Edwards about that, that he was concerned that that perhaps could lead to a sentence approaching the statutory maximum as well. Mr. Hughes, on page 18 of your brief, you say McShane's misrepresentation of material facts upon which Edwards wholly relied constituted deficient performance. What facts were misrepresented? I believe the facts that were misrepresented were the chance of Mr. McShane's argument, or rather his position that he would argue for a sentence of 27 to 33 months based upon, he would argue to the court that, for instance, the Plainfield marijuana that's referenced in the brief, there was approximately 700 pounds. A lot of it was mythical. Right. And that's not a bad argument. It didn't work here, but it's not a bad argument. Right. But this accusation that counsel misrepresented material facts to his client is pretty serious, and I haven't heard one yet. Your Honor, that was based upon Mr. Edwards' testimony at the evidentiary. So we're back to arguing based on his testimony instead of the district court's findings, which rejected that testimony. Is that correct? Well, in the factual summary of the brief, yes, Your Honor. This is in your argument, and I don't What have I misunderstood? With respect to, may I inquire of the court, Your Honor, with respect to what issue? What facts you are saying counsel misrepresented to his client. I think the facts. It's a serious accusation. If it were correct, it would be very easy to rule in your favor, and I see nothing to back it up. Your Honor, the fact that Mr. Edwards had a reasonable chance of the court imposing a sentence of 27 to 33 months. Okay. You think that's a fact? I mean, it looks to me like that's just, here's the wildest best case scenario, right? We get you off on the gun charge, which you did. That's right. And we convince the judge to forget about the fact, at least not to focus on the fact that you're a police officer gone bad, and we forget about the mythical marijuana from the sting operation. That's correct. It's not a crazy argument. That's correct. And you do expect lawyers to tell their client, in essence, in these negotiations, what's the best outcome, right? Absolutely. And that's, so what's wrong with telling them that? We just feel that perhaps misrepresentation was not the proper word to use. It clearly was not. I agree. I'm particularly saying a misrepresentation of a fact, and, well, I've made my point. He inaccurately gave an inaccurate opinion as to the likelihood of success of the argument that he could get 27 to 33 months. But, again, this is depending upon Edward's testimony, correct? That's correct, Your Honor. Which was rejected by the district court. Yes, it was. And I have nothing further. All right. Thank you. Mr. Vaughn. Good morning. My name is Joe Vaughn. I was one of the assistant United States attorneys who participated in the prosecution of Mr. Edwards in the underlying case. I kind of, to address the inquiry from Judge Hamilton, I believe what has happened here is that the defense has kind of changed course, that there was the evidentiary hearing. Mr. Edwards testified to a whole lot of things that the district judge found to be incredible. Those facts that were rejected by the district court were then set forth in the appellant's brief. Here today, Mr. Edwards' counsel has said, well, I am no longer relying on those facts that were based upon the testimony that was rejected by the district court. Instead, I'm going to go with the court's findings, which found Mr. McShane to be the credible witness. The only thing that Mr. Edwards' counsel was able to point to that was in any way arguably deficient was that Mr. McShane should have said, in addition to here's your best case scenario, which there's no question he advised him of, here's your worst case scenario, which is no longer an issue, but that there was an additional burden that Mr. McShane should have said, and here's what I am advising you on how to decide between these options. I am not aware of there being any case law that supports that, and I believe all that the attorney is required to do is to advise of the plea offer, the possible sentencing ramifications, and the choice is ultimately up to the client. And I think that would be especially true here, where we have Mr. Edwards, who had a four-year college degree. He'd been a police officer for, I believe, eight years, five of which he had been a narcotics detective in the dangerous drug section, where he worked on conducting mid- to upper-level narcotics investigations. So I think based upon the facts that the court found to be true, and which are not being contested, the defense has failed or Mr. Edwards has failed to establish that Mr. McShane's performance fell below an objective standard of reasonableness, nor has he alleged or established any kind of prejudice. If there are no further questions from the court on this matter. Yes, Your Honor. Mr. Brown, if I could just ask, was there any discussion of the question of prejudice in the district court, particularly with respect, since this was going to be, the offer was an 11C1C binding plea agreement, subject to Judge McKinney's discretion to accept or reject. I didn't see any comment from Judge McKinney about that. You are correct, Your Honor. In Judge McKinney's order, he focused solely upon there not being any deficient performance. In the advice, yeah. In his findings. Was there any testimony about that question? And if Mr. Hughes has the opportunity to address this on rebuttal, I'd like to ask him as well. I think it would have arisen in the context of, boy, had I known or had the advice been different, I would have jumped all over that 10-year plea. Well, there's that element of prejudice and causation in terms of whether the defendant would, in fact, have accepted. But here we've got the extra layer of how the judge would have handled it as well. And the judge did not address that. And was it in the evidentiary hearing? I don't know how you ask the judge to testify in the evidentiary hearing. I don't believe, only in the context that I just addressed. Okay, thank you. And if there are no further questions from the court, the government would adopt and would stand on its brief. All right, thank you. Thank you very much. Mr. Hughes? One minute. The only thing I would offer, I believe that Judge McKinney certainly had an opportunity in his written order that he could have addressed that issue, whether he would have accepted or not. And the order, of course, is silent as to whether he would have accepted the 11C1C. All right. Thank you. Thank you to both counsel. We'll take the case under advice.